Patel. Council, let everyone get situated. All right, Mr. Vogeltens, I hope I pronounced your name correctly. You did, Your Honor. Okay, you may begin. Thank you. May it please the Court, Opposing Council, good afternoon, everybody. I'm Kevin Vogeltens. My client is the plaintiff, Shane Wilkinson. Mr. Wilkinson brought a race, color, sex, national origin, and other discrimination and retaliation case in the Eastern District. Ultimately, the District Court dismissed his case on summary judgment. I ask for oral argument to be able to discuss some of the pertinent legal and factual issues I thought most important. But ultimately, I would ask this Court to reverse summary judgment for the same reason that this Court, when it does, usually reverses summary judgment, which is there are many disputed material facts on the record that pervade the record, and Rule 56 was never designed to allow a District Court to resolve those material disputed facts in favor of one party over the other. Before I begin, or before I go into some of the statutory issues, I would like to spend a few minutes talking about these material disputed facts in the record. These are all briefed in appellant's brief to the Court. They're also briefed in the government, the Ultimately, the defendant suggests that Mr. Wilkinson, the general manager of this hotel in Covington, was a bad manager. He had poor performance. It doesn't make a lot of sense at first blush, because the time between when he first began working at the hotel to when he was fired was only about two years. He started as a front desk clerk, and then he was promoted very quickly to general manager and given several pay raises. He got a new job once before he was fired. That was Laura Rosa. Laura Rosa was not involved in his original hire or his promotion. The District Court found in this case, which I'll talk about later, that there was direct evidence of discrimination that Mr. Wilkinson brought forward to the table in summary judgment for race and sex discrimination. Nevertheless, the District Court fully credited the defendant's explanation that they thought that Mr. Wilkinson was a poor performer. The defendants at different times in this case gave different reasons and inconsistent reasons and changing reasons for what that poor performance was. But very importantly, Your Honors, at every stage of the process, Mr. Wilkinson, pointing to record evidence, disputed those claims. At the very beginning, there was a termination letter given to Mr. Wilkinson the day that he was fired in December of 2019. And that letter had a hodgepodge of complaints against Mr. Wilkinson. He gave a deposition, and every single point in that letter, he challenged. He said, that's not true. That's not what happened. Management was responsible for that, not me. And one of the consistent themes that we see in this case is that unlike many employment cases, it is undisputed that there is zero corroborating documentary evidence produced by the defendant that substantiate or corroborates any of the defendant's self-serving testimonial statements that they thought that he was a bad performer. After we filed the lawsuit, they gave a different reason in written discovery and in depositions. Now they kind of shifted from this picayune complaints in this termination letter, and they said, well, there was something called rate management that he was not doing. The fact that Shane Wilkinson was at the helm during a Hilton franchise inspection and they failed the inspection, that was a strike against him. But Laura Rosa, his immediate supervisor who drafted the termination letter and participated in his firing said, that's not true. We didn't hold that against him. And that would make a lot of sense because they've admitted that his predecessor and his successor to the position failed that same inspection as well. In fact, they've testified that no general manager at this Hampton in Covington has ever passed this inspection. Take that for whatever you will if you want to stay at the Hampton Inn in Covington. They said that there was mold and that Mr. Wilkinson was not efficient in dealing with the mold. Mr. Wilkinson testified that untrue. He actually got more rooms into service that were out of service because of mold. And again, Chris Patel, the owner of the corporations and Laura Rosa said that in reality, we didn't fire him because of the mold. This goes on and I don't want to waste all my time. This goes on over and over and over again. Go ahead, Your Honor. I was going to ask you, are you arguing that this, all of which you've just presented, it was grounds for the argument that he was fired, that they're pretextual, or rather the concept that the overall concept that he would have been fired anyway to the extent that there's a legal distinction between the two? I suppose a good employment lawyer would say that, yes, there is a legal distinction between the two, and it has to do with if you're proceeding under direct evidence under 2000 E-2 subsection A, or if you're in the McDonnell-Douglas circumstantial evidence burden-shifting framework. Here it probably doesn't matter, Your Honor, because under any framework, it does not seem plausible or realistic that any reasonable jury looking at these disputed facts would necessarily arrive at the conclusion that the defendant was telling the truth and Mr. Wilkinson was not. But I'll take that opportunity to kind of move into the legal argument of the case, which is this. As best as I can tell, and I put a lot of time and effort researching the issue, there has never been a case in the Fifth Circuit Court of Appeal for the United States of America in which the district court found that there was direct evidence of discrimination, but granted the defendant's summary judgment anyway. And in fact, I was so tickled by this question that I expanded the scope to every single district court and federal appellate court case in the United States of America. This is briefed in a footnote in my appellate's brief. In the entire history of the United States of America, as best as I can tell, there has only been one case ever in which a court found direct evidence of discrimination and granted the defendant's summary judgment, which was upheld on appeal. And that was a Seventh Circuit case called Campbell, which is in the brief. And that case has nothing to do, has no similarity with this case whatsoever. And it was charitable that the Seventh Circuit even called it direct evidence to begin with. And in their words, it was overwhelming evidence that he was fired for a different reason. This court has described direct evidence of discrimination as rare. If that is true, then the idea that a defendant could win summary judgment when there is direct evidence of discrimination is a unicorn. It does not exist except for right here and right now. Now, the, in the way that you would analyze this issue, which is what the district court did correctly, if there is direct evidence of discrimination, then under Subsection A of Title VII, the defendant could only prevail by proving that it, by proving as an affirmative defense that it would have fired the plaintiff no matter what, regardless of the impermissible discriminatory motive. That's this court's Etienne line of cases. I hope I'm pronouncing that correctly. I've never heard it spoken out loud before. But as amicus counsel briefed and as I agree with, ultimately Etienne traces its roots to pre-1991 amendments to Title VII. And as we all know, that in 1991, Congress amended Title VII, and it included Subsection M, which I want to talk about in a second. But for right now, for present purposes, I would argue to this court that even under a McDonnell-Douglas burden-shifting framework, there's so much disputed material evidence that you could not possibly rule against Mr. Wilkinson on summary judgment. It seems bizarre to think that a defendant could carry an affirmative defense as a matter of law based on a disputed factual record. But that is ultimately what the district court held. And— …to make the decision to terminate the plaintiff in this case. Is it one person? Does it go all the way up to Mr. Patel, who makes the decision? Or is it one of the other defendants? Even that point, Your Honor, is disputed by the defendants themselves and the record. Chris Patel says that he was presented the termination decision from Russell Block, his number one, and Laura Rosa, his number two, and he generally goes along with whatever they say. Russell Block was not Mr. Wilkinson's immediate supervisor, but he had—he says that he has termination authority over all managers. Laura Rosa says that she had termination authority over Mr. Wilkinson. What they agree with is that Block and Rosa made the decision to fire Mr. Wilkinson. They wrote the termination letter and they presented it to Mr. Patel. But even Laura Rosa herself in her deposition, which is in the record, says that Patel did not really involve himself in these things and he left it up to them. So even that is not true. The defendant cannot—again, this is under McDonnell-Douglas—but in the intermediate burden that they carry to show a nondiscriminatory reason for termination, they have a burden of production, not persuasion, but a production of putting forward enough evidence that if the jury believed it, it would be a nondiscriminatory reason. But this Court has held in other cases that they have to at least give enough evidence to the plaintiff that the plaintiff has the extent that the defendants can't even really decide amongst themselves who fired Mr. Wilkinson and what particular reason, and it shifts over as well. I would say that if I had to, that goes to undermining their intermediate burden. But that's the subsection A direct evidence standard. I would also be remiss if I didn't say that in 1991, Congress amended the statute. How they amended it? Well, they added subsection M. Subsection A of Title VII says it shall be an unlawful employment practice to do what? Relevant here to fire someone because of their race or the color of their sex or their national origin. We typically think of that as a but-for causation standard. In 1991, Congress amended the statute with subsection M. What did subsection M say? It expanded the definition of an unlawful employment practice. Subsection M really says it shall be an unlawful employment practice for if a plaintiff can prove that the adverse action taken against him was motivated by his race or his color or his sex, even if the defendant had another reason that motivated the decision. But note that subsection M does not purport to create a new cause of action. It does not purport to create a new claim. It expands the definition of what is already made illegal under subsection A, which no one in this court, my opponent on the other side, would disagree that we pled properly. We pled discrimination based on race, color, and sex under subsection A, and M simply modifies and expands the way that we can prevail in that case. Am I correct in understanding that you don't cite subsection M or NASSAR, I'm not sure if I'm pronouncing that correctly, in your opening brief? This is an issue that's added by the amicus. That's correct, Your Honor. Okay, so it's a little bit awkward to rely too much on an oral argument if it's not in the opening brief. Can I ask you, can I go back and just ask a question on your antecedent point, because I want to make sure I understand this. Where, in your view, do we consider, if at all, your client's replacement and the race, nationality, et cetera, of your, that's the lead argument that we're going to hear in a minute, I assume, from your friend on behalf of your client? Our position is that once you prove direct evidence on summary judgment, there is no longer, it's no longer relevant who the replacement was as a matter of law. That's a consideration that only appears in the McDonnell-Douglas burden-shifting framework in a circumstantial evidence case. Judge Asch in the district court said that this was a direct evidence case, and so we don't have to concern ourselves with that. We're entitled to prevail regardless. But since you brought it up, Your Honor, and I did discuss this in the briefing, at the district court, we presented evidence in the record in the form of a declaration from one of Mr. Wilkinson's former co-workers, who was employed by the defendants, that after Mr. Wilkinson was fired, he was replaced by a man named Robert Dansbury, who's a white man, and the defendants make a lot to do about this. But Ms. Anthony, Chastity Anthony, testified, she was the head of housekeeping, that in her view, Mr. Dansbury never really was the GM, at least for as long as she was there. It was actually the assistant general manager when Mr. Wilkinson served, her name is Ashley Vanderhoff, a woman, and that she was the de facto manager and Mr. Dansbury merely was working the front desk. And then my friend across the aisle, they had to file a Rule 28J letter in this case, because we made the point that it's a disputed fact who actually replaced him. They had to file a Rule 28J letter saying that, ah, actually Mr. Dansbury has moved on, and it is Ashley Vanderhoff now that is formally and officially running the show at the Hampton Inn. That's exactly the point that we wanted to make at the district court level, and we, I think, were credited with that in the Rule 28J letter. But that's just another example, Your Honor, of a disputed material fact that the district court didn't seem to pay much mind to when it was resolving the case against us. I have 30 seconds left. I do have some rebuttal time. I would like to just say this. I think this is an important issue. Under Reeves v. Sanderson-Plumbing, a district court is not supposed to fully credit against a plaintiff on summary judgment testimony from interested witnesses when that testimony is not otherwise corroborated or supported. The only testimony against Mr. Wilkinson that was proffered at the district court level that was contemporaneous to the decision to fire Mr. Wilkinson was by the named defendants, which in this court, we cited the case from 2019, I believe. Named defendants are interested witnesses, and they should not have been credited. Thank you. Thank you, Counsel. Ms. Auld? Good morning, Your Honors. Renee Smith-Auld for the Appellees, Pinnacle Lodging, My Hospitality Service, Chris Patel, Laura Rosa Perkins, and Russell Block. I may refer to the Appellees collectively as Pinnacle. The Appellees maintain that the district court's exhaustive 46-page ruling should be upheld because Laura Rosa's alleged comments, even if true, are not actionable under Weary v. Lumber Liquidators that was decided by this court on January 3rd of this year. The Appellees' complaint is that the district court used the proper standard, whether direct evidence or indirect evidence, when one, the employer meets its burden of producing legitimate, non-discriminatory reasons for termination, as Pinnacle did here, and two, the plaintiff is unable to come forward with evidence establishing reasons were pretext. Pinnacle contends that Rosa's comments were stray remarks, and we dispute that the lower court found that the remarks are direct evidence. There is not a definitive holding that they were direct evidence. Further, the Appellees will show, not only by a preponderance of evidence, as Mr. Vogentant cited in Campbell, which was decided by the Fifth Circuit, that any reasonable jury would conclude that Pinnacle would have made the same decision to terminate Wilson regardless of Rosa's alleged comments. Importantly, Pinnacle will demonstrate that this honorable court had multiple reasons for terminating Mr. Wilkinson. He says that there are various inconsistent shifting reasons. I'm going to try to make it through. I'm sorry I'm going to have to talk fast, but there are over 30 reasons, 30 grounds why Pinnacle terminated Mr. Wilkinson. Here, there is no record evidence that shows that the appellant was fired for being Caucasian, that, or that he was fired for being a man, particularly when he was terminated by a white man, Russell Block, and a white woman, Laura Rosa Perkins. This case can be distinguished from EEOC v. Ryan's point, because unlike in Ryan's point where a Mexican woman, Ms. Villalobos, was replaced by a white woman with the look of we did file a Rule 28J letter. Ms. Vanderhoff did become the assistant manager when Mr. Danbury left, but Ms. Vanderhoff was the assistant general manager under three general managers. It's not all of a sudden, oh, she's a white woman, now Denny has left. Ms. Vanderhoff was the assistant general manager under three general managers. Unlike Ms. Villalobos, who was called a trashy Mexican, Wilkinson was never called any names by any of the defendants, and despite the comments that were set forth in the plaintiff's complaint in paragraphs 81, 82, and 86 of the complaint, there was not an influx of Latinos hired at the hotel, and a Hispanic was never hired to take over anyone's job. The decision of the lower court should be affirmed based on various grounds, because the appellant does not provide the tools, the record evidence needed to overturn, to disturb the district court's decision. The decision of the trial court should be upheld for the following reasons. First, the district court did not err in granting summary judgment a pinnacle, and did not find, despite appellants and the EEOC's contentions, that Rose's comments were direct evidence of discrimination. What else would Ms. Rosa have to have said, other than the fact that, as is alleged in the record, quote, during his first meeting with Ms. Rosa, she told Mr. Wilkinson and one of his staff members, Chastity Anthony, that she was going to replace them with Hispanics because they work cheaper and faster. So what more would pinnacle require of our precedent to constitute direct evidence? Because she, those, what you exactly just said, what you quoted, that was, for starters, that was not alleged in the petition. Paragraph 82 of the petitions only says that Mexican employees work harder, faster, and cheaper. The problem with Rose's comments is that they are, in fact, a threat to the district court's ability to assert its own validity and inference, a thought process which basically resembles a syllogism to connect the dots for the comments to be considered discriminatory. Counsel, I'm reading from the district court's opinion. I mean, what I just read to you is from Record on Appeal, page 1100. So I'm not sure, and which is exactly what Judge Ashe says likely constitutes direct evidence. So are you saying that it's not competent summary judgment evidence? Is that what you're saying? That the district court does not indicate that the comments are direct evidence. But what the district court did say and what the courts allow is that the burden shifts, if it's considered direct evidence, the burden shifts to the employer to prove by a preponderance of the evidence that the same decision would have been made regardless of the discriminatory action. So EATEEN and the cases following EATEEN allow a burden-shifting mechanism if there's a finding of direct evidence. So maybe we should talk about that. Why don't we talk about the evidence that Pinnacle put forward to justify the termination decision? Pinnacle puts forward a number of reasons for the discrimination. And let me say one thing before I list all the reasons. This case is unlike Allen. And Allen, the court found that the plaintiffs, that the plaintiff was able to show pretext because that basically the U.S. Post Office was sabotaging her. They didn't give her an arrow key. They made her clock end when she was in the office and not get her mail. The lower court determined that the reasons for firing Wilkinson were not pretext. On page 1111 of the record and page 1112 of the record, the lower court found that Wilkinson did not address lack of leadership, failure to complete administrative duties, failure to manage sales and marketing. Other reasons Wilkinson did not address for his termination were insubordination, the fact he didn't develop into a general manager, his lack of enthusiasm, and the fact that other employers had to perform general manager responsibilities. So to answer your question about the reasons for the termination, reasons 1 through 15 that I'm going to give were given by Block in his deposition. And importantly, again, Mr. Block is a white man who terminated Mr. Wilkinson. And these reasons are found on page 327 of the record, condensed transcript, page 26, line 11 to page 27, line 1. Reason number 1, failure to set rates and handle rate management. Reason number 2, failure to handle revenue management. Reason number 3, failure to document employee actions. Reason number 4, Wilkinson was incapable of performing his general manager responsibilities. Block specifically said that any task that fell under the region manager hat, that he was basically incapable or refused to do it. Even when he was instructed how to do it, he would come up with a reason why he couldn't do it. Ground number 5, failure to handle personnel aspects of the hotel. That's on page 328 of the record. Reason number 6, failure to handle sales and marketing. Block said Wilkinson did absolutely nothing, which is a general manager responsibility in the areas of sales and marketing. That's on page 328 of the record. Ground number 7, he didn't develop to the general manager that they needed to operate the hotel. That's on record page 327, 328. Reason number 8, he did not do anything to make the hotel more successful. That's on record page 327. Reason number 9, lack of leadership. Block says that on page 29 of the record. Patel says that on page 282 of the record. Condensed transcript, page number 109, lines 14 to 22. Patel also said that in interrogatory 7 on page 385 of the record. Rosa, page 986, interrogatory number 3. Vanderhoff, page 579 of the record. And Shake Snyder, page 1085 of the record. Ground number 10, failure to perform administrative duties. That's on page 327 of the record. Also on page 308 of the record. Reason number 11, Mr. Wilkinson allowed an employee to live at the hotel without paying. That's on page 329 of the record. Condensed transcript, page 35, lines 11, excuse me, lines 14 to 17. Ground number 12, the hotel failed to handle the corporate inspection in November of 19, excuse me, 2019. That's on page 334 of the record. Page 385 of the record. Interrogatory number 7, response of Pinnacle. And page 327 of the record. He was not hands-on. That's ground number 13. That's on page 327 of the record. Condensed transcript, page 29, lines 15 to 16. Reason number 14, Wilkinson did not, excuse me, Wilkinson had other employees handle direct general manager responsibilities that he should have been doing himself. Block said whether he was just too lazy, didn't know how, didn't want to ask. That's on page 327 of the record. Condensed transcript, page 29, lines 16 to 20. Reason number 15, he was terminated for lack of following through on remediating the mold. That's on page 359 of the record. Page 157 of the condensed transcript, lines 2 to 7. That's also on page record 27. Interrogatory number 5. The next one is very important. Poor performance, which is basically all the reasons I have given so far. That Block said that on page 327 of the record. And that was also in the termination letter, page 327, and in the record 827 as well. Patel also said he was a poor performer on page 282 of the record. Rosa also echoed those sentiments on page 986 of the record. Interrogatory number 3, Vanderhoff said that on page 589 of the record. And this Court has repeatedly, repeatedly held that a charge of poor performance when coupled with specific examples satisfies an employer's burden of proof, setting forth legitimate, non-discriminatory reasons for a termination. And that is set forth by this Court in Weary, quoting Burton v. Freescale. Reason number 17, Wilkinson considered visits from Chris Patel more social. When Chris Patel would visit the hotel, which he did from time to time, Wilkinson would talk to him about his jeep, his dogs, everything but work. So it got to the point where Chris Patel would not even ask for Wilkinson when he went to go visit the hotel. That's on page 279 of the record, condensed transcript, pages 97 to 98. Reason number 18 was lack of his ability to control the hotel, lack of enthusiasm, overall lack of performance. That's on page 282 of the record. Reason number 19, Chris Patel thought he was an absentee leader. He spent a lot of time attending dog shows, baseball tournaments, and due to illness. That was on page 282 of the record, and Patel said that. Then Block also mentioned that on page 827 of the record, interrogatory number 5. Patel said that on page 385 of the record, interrogatory number 7. Rosa said that on page 987 of the record, interrogatory 4. Reason number 20, Wilkinson did not adequately prepare the whole staff leading up to the Hilton inspection. That is page 383 of the record, condensed transcript page 115, line 22 to 25. Reason number 21, the cleanliness and the documentations per room per quarter were not up to date. That's on page 283 of the record. One thing I would like to say as I'm mentioning all these reasons, Rosa became the general manager approximately July of 2019, and at that time the next Hilton inspection was coming close, coming very up. So it was not just because she had some discriminatory animus against Wilkinson. The hotel was trying to get its numbers up for all the ratings and all the things, all the levels that it had to meet for the Hilton protocol for the inspection. There was some timing there, but an inspection was coming up. And importantly, another thing that I'm running out of time, but ... Each of those that you've listed exhaustively, the 20-something reasons, the record sites that you've given us, do they also contain at that site instances wherein those deficiencies were brought to his attention as needing correction, or are those things that have all come out once the litigation began? Those things were brought to him, to his attention. He is in a managerial position. He was not always given a written warning. A lot of these things were talked about to him directly by Rosa during visits. And what's also important that I want to mention while I have this opportunity, too, is the lower court did not err in finding that Wilkinson was not retaliated against and never proved that he complained to Pinnacle Upper Management specifically about Rosa's alleged discriminatory remarks. On page 350 of the record, condensed transcript, page 358, any complaints to him that Rosa made discriminatory comments about race, national origin, or gender. This case can be distinguished from Allen once again, where the plaintiff was told a position was rescinded because she was at war with the post office based on a prior EEOC complaint. Let me get back to the reasons that Mr. Wilkinson was given for his termination in the termination letter. The letter indicated he had several failures. Number 22, he failed to review, monitor, make recommendations toward rate management that resulted in lower than expected occupancy. Reason number 23, he failed to keep Russell Block updated on all tasks that were to be completed prior to the Hilton inspection. Reason 24, he lied. He advised Upper Management, Rosa, Block, Patel on several occasions that items that were slated for the Hilton inspection were completed, but they were not. That was including light stay, fire inspection training, and crisis management. Reason number 25, the staff had to complete training at home, which took them over 12 hours, but Wilkinson told Upper Management, Block, and Patel on July 13, 2019, August 8, 2019, and October 4, 2019, and several times in November that the training had been complete and it would not. Reason number 26, he got in the way of Rosa being able to complete her job and to see where the hotel was located with the brand standards. He prevented Rosa from helping the hotel getting ready. She had to go to another general manager to get online access to make sure that Wilkinson was complying. That's on page 326 of the record. 27, 28, 29, 30, he lacked overall knowledge of the hotel's protocol. He failed to listen and follow directions, threats to quit, and so forth. Wilkinson Vanderhoff believed he had zero leadership skills. He was manipulative, didn't get his job done, rarely greeted guests. Pinnacle requests that the lower court decision be affirmed. The judgment at issue is entirely consistent with historical and very recent law in the circuit, including Hester, Weary, and Ware, and a number of others. Thank you, Your Honors. Thank you. All right, rebuttal? I have three points I'd like to get through Your Honors. Number one, even if everything that my friend just said about Mr. Wilkinson's performance was undisputed in the record, and we assert that everything she said is undisputed in the record, that does not get them across the finish line of summary judgment in a direct evidence case. In a direct evidence case, it is not enough to merely show that there is a nondiscriminatory reason and the plaintiff fails to show pretext. In a direct evidence case, you have to show that in addition to there being performance issues, even though the jury is entitled to find that you have racist or sexist attitudes, that you didn't consider those attitudes when you decided to fire them. The defendant, when they filed their motion for summary judgment and on their reply, they never even mentioned the direct evidence standard, and they never took it upon themselves to put forward that extra evidence, their affirmative defense evidence, that even if all of these performance issues were true and they're disputed, that they still would have fired them anyway and there was a complete absence of impermissible motivations. The only entity, and I say this with a lot of respect, the only entity in this case until the appellate briefing that ever bothered to argue against Mr. Wilkinson on the direct evidence standard was the district court, and the district court admits this in its 48-page ruling, that the defendants did not brief this issue, but in the district court's opinion, they've met their requirement regardless. My second point, the weary case, the Rule 28J letter that was filed yesterday, that case is not a direct evidence case. That case has nothing to do with this case. In that case, the Fifth Circuit held that under the circumstantial McDonnell Douglas burden shifting framework, that some, what the Fifth Circuit called stray remarks of discrimination, they didn't have to determine whether or not those could make up the fourth prong of the case. They took the shorter route to affirm summary judgment. That's not this case for all the reasons that we've talked about so far. My final point, this is on my second time here in this Court, the first time, Judge Ho asked me at the very end, Mr. Vogeltans, what's your best case? And I guess I didn't have a very clever answer for him because he ruled against me, so I thought about that coming here today. What are my two best cases? I have two best cases, and they're both from the last year, the Fifth Circuit. Number one, the EEOC v. Ryan's Point. I would submit to Your Honors, and I think that Your Honor made this point yourself, whatever the Fifth Circuit found to be direct evidence of discrimination just eight months ago in Ryan's Point that was sufficient to reverse summary judgment is at least as obvious to be direct evidence of discrimination as in this case. And in Ryan's Point, not only was that evidence used to reverse summary judgment on the direct discrimination claim, it was also used as circumstantial evidence sufficient to reverse on a retaliation claim that, just like in our case, we admit we don't have direct evidence of retaliatory animus, but we can use certain of these comments, and there's a comment about Laura Rosa saying that you're not going to get rid of me and Russell Block laughing in Mr. Wilkinson's face when he complained about these things, that it should also be reversed. The second case, which was just two months ago, that's Allen v. United States Postal Service, and in that case, again, the Fifth Circuit held that direct evidence of retaliatory animus, which was just one comment, one comment, which the Post Office, Human Resources Officer said, we can't hire you for this job because you're at war with the Post Office right now about an EEO. That one comment was enough to reverse summary judgment in a retaliation case when it was direct evidence, and otherwise, I think this is probably the most relevant to what we're talking about here today in terms of the performance. In Allen, the Post Office, just like my friend here today, says, you know, this woman was not a good postal worker, but Ms. Allen and her—actually, not even a deposition, it was an affidavit submitted in defense of summary judgment—alleged facts that indicated, that could indicate to a reasonable jury that in reality, she was a good performer, that these things were not true, and that in the words of the Fifth Circuit, she was being set up. That's exactly what we have here, only we have it in spades. We have his verified complaint, his deposition testimony, Chassidy-Anthony, DeMille Topps, inconsistencies from the defendants themselves, and if Allen, if a self-serving affidavit filed just on summary judgment was enough to create a factual issue in a McDonnell-Douglas situation to reverse summary judgment, surely, Your Honors, it's enough in this direct evidence case with the plethora of evidence that we have presented. Thank you so much. Okay. Thank you, Counsel, and thank you all for your briefing. In the case, this will conclude today's oral arguments for the panel. The Court will be in recess until 9 a.m. tomorrow morning.